In re STEED et al.

(District Court, E. D. North Carolina. April 9, 1901.)

1. BANKRUPTCY—DISCHARGE—OBJECTIONS—REVIEW—DUTY OF REFEREE.

In every case in bankruptcy on a petition for discharge and objections thereto sent up for review, the referee should find the facts, and state his conclusions of law.

2. SAME—STATEMENT OF OBJECTIONS—SUFFICIENCY.

Acts stated as an objection to a bankrupt's discharge to have been committed a "short time prior to" the petition would not bring it within the four months' time limit, even if they were good grounds for refusing it.

3. SAME—FALSE AND FRAUDULENT REPORTS.

Bankr. Law, § 14, enumerates as grounds for refusing a discharge the commission of an offense punishable by imprisonment as therein provided, or the fraudulent destruction, concealment, or failure to keep books of accounts or records showing an insolvent's true financial condition. *Held* not to include false and fraudulent reports to commercial agencies.

4. SAME—FAILURE TO DISCLOSE ASSETS—INVESTIGATION.

Where there seems to be probable cause for opposition to petitioners' discharge in bankruptcy on the ground that their petition did not contain a full, true, and correct statement of assets or financial condition, the discharge will be refused until the charge can be regularly investigated, and the record submitted to a proper tribunal, where they may be tried, and punished, if guilty, as the act prescribes.

5. SAME—RELIEF AGAINST FRAUDULENT CONVEYANCE—JURISDICTION.

For the conveyance to a partner's wife of a lot bought and paid for with firm assets the district court sitting in bankruptcy cannot grant relief or entertain a suit for that purpose, and an order of the referee authorizing the trustee to sue therefor in the state courts will be affirmed.

6. SAME—POSTPONEMENT OF DISCHARGE.

Where, in opposition to a discharge in bankruptcy, it appears that a sale void as a preference, and made in fraud of the act, was made by bankrupts nine days before their petition was filed, though not a ground for refusing a discharge, it warrants a postponement thereof until the trustee, with the aid of creditors, seeks a remedy therefor, which before was not done.

7. SAME—FINAL MEETING OF CREDITORS—REFERENCE.

The reference to the referee in bankruptcy to hold the final meeting of creditors under Dist. Ct. Rule 8, and the allowance of a fee therefor, constitute him a special master for this purpose, and such procedure is authorized.

8. SAME—INSOLVENT FIRM—EXEMPTIONS OF PERSONALTY.

Const. N. C. art. 10, § 1, allowing exemptions of personalty to an insolvent debtor in that state, does not contemplate that the same shall be duplicated by allowing him the exemption both from his individual estate as well as from his interest in an insolvent partnership; and hence in voluntary bankruptcy proceedings by the firm he should not be allowed the exemption out of the firm assets, unless it appears that he has no individual personal property exemption exclusive thereof.

In Bankruptcy. Petition for discharge, and objections thereto.

John H. Cook and Patterson & McCormick, for creditors.

B. F. McLean, for petitioners.

PURNELL, District Judge. Steed & Curtis were, on their own petition, adjudged bankrupt January 18, 1901. Six reasons are assigned why the discharge should not be granted:

1. That the bankrupts at various times not long prior to the filing of the petition made or published false and fraudulent statements of their financial condition, with intent to conceal their financial condition, etc. The referee does not find the facts, or state his conclusions of law, as should have been done. This should be done in every case sent up for review. A referee, who has seen the witnesses, and heard their testimony, can find the facts to much better advantage than the judge can from depositions. The facts seem to be, not that the bankrupts failed to keep proper books in contemplation of bankruptcy, or even contemplated bankruptcy, but made false reports of their financial condition to a commercial agency and to some of their creditors. There is some dispute as to the date of the last of these reports. The report is dated January 1, 1900, but made in September, 1900. It was "dated back" to the day of the last inventory, and the bankrupts claim the agent to whom it was made was told at the time the statement was based on such inventory. It will be noted the bankrupt act was ratified July 1, 1898, but by express provision did not go into effect until four months thereafter. This avoids the construction that it is retroactive or ex post facto as to preferences or other acts mentioned and made void within the four-months limit. Certain acts within four months of adjudication are made void, not because they are immoral or fraudulent per se, but because the act makes them so. Beyond this statutory limit, the bankrupt court is not given jurisdiction of such matters. To declare an act void,—such as an assignment or preference,—it must be done within the time limit, and the acts made criminal under the act are acts after the adjudication. This does not affect criminal acts generally, but those punished specifically under the act of July 1, 1898. This act does not warrant a proceeding resembling or similar to those under a bill of discovery, or, in the language of the Code practice, proceedings supplemental to execution. The objection cannot be sustained, for the reason that "a short time prior to" would not bring it within the time limit, even if the acts set forth were good grounds for refusing a discharge. The objection, though, is not such as the act makes ground for refusing a discharge, viz. "committed an offense punishable by imprisonment as herein provided"; or, "with fraudulent intent to conceal his true financial condition, and in contemplation of bankruptcy, destroyed, concealed, or failed to keep books of account or records from which his true financial condition might be ascertained." Section 14. The acts complained of do not fall under either. The obtaining credit by false statements of an existing fact intended to deceive would constitute a crime under other statutes, but is not an offense punishable by imprisonment under the bankrupt act. Reports to commercial agencies or creditors, though false and

fraudulent, are not grounds for refusing a discharge. This would be punishable under other laws, in other courts; and, if the debt is created by fraud, the bankrupt is not discharged therefrom. Section 17, cl. 4; Forsyth v. Vehmeyer, 177 U. S. 177, 20 Sup. Ct. 623, 44 L. Ed. 723, 3 Am. Bankr. R. 807; In re Thomas, 1 Am. Bankr. R. 515, 92 Fed. 912; In re Rhutassel, 2 Am. Bankr. R. 697, 96 Fed. 597; In re Peacock, 4 Am. Bankr. R. 137, 101 Fed. 560. First objection overruled.

2. That the petition did not contain a full, true, and correct statement of the assets of the bankrupts, or of their financial condition. The referee finds as a fact (which does seem to be controverted) that Steed & Curtis were insolvent for four months prior to the filing of the petition. The firm commenced business in 1899,—two years before the filing of the petition. J. C. Curtis contributed $500 and Steed $500. During this period the personal account of J. C. Curtis with the firm is $1,937.66, as shown by the books, and that of P. S. Steed, $1,989.94. J. C. Curtis has a warranty deed for a lot in Maxton, for which he testifies he agreed to pay (but has not paid) $265. On this lot he has erected a dwelling at a cost of $1,224.20, paid out of the business, much of it within four months; but he testifies he cannot tell how much, and the books do not show. This property is on one of the principal streets of Maxton, and is scheduled at a valuation of $950. Between November 17th and December 17th Curtis estimates the assets of the firm at $4,000 in stock and $700 in accounts. An inventory was taken on January 1, 1901, and footed up $4,100. On the 9th day of January the firm sold its stock of goods for $3,145, $2,500 of which was paid,—$2,000 cash, $500 soon after,—and a note for $641.11. This note is signed by a married woman. The firm also owned three shares of stock in the bank, valued at $150, which is not in the schedules of assets. Curtis further testifies that at the time the stock of goods was sold the firm was indebted $5,-851.34, as shown from schedules and exhibits. Steed put $500 in the firm, and soon after drew out $217 to pay money borrowed for this purpose. On the day the stock of goods was sold, Steed procured a deed to be made to his wife for a lot to which he had procured a bond for title to her about a year previous. This and the house built thereon was paid for by Steed, the party from whom the lot was purchased having no dealing with the wife. The amount paid for the purchase of the stock was deposited to the credit of the firm's attorney, and $1,412.91 has been checked out of bank by such attorney, leaving a balance of $587.09. One of the parties, according to the deposition, was married on December 31, 1900,—9 days before the sell out, and 18 days before the petition was filed. If this be correct, he seems to have gone into matrimony in contemplation of bankruptcy, or into bankruptcy in contemplation of the results of matrimony. The record does not disclose which is cause and which is effect, and it is not material to decide. Events seem to have been crowding upon each other,—December 31st a merchant and bridegroom; nine days thereafter closed out; nine days later a bankrupt, with most of the firm assets paid out to favored relatives and creditors, including the attorney who was managing the firm's affairs. If matrimony was the

cause, it would be a strong argument against that honored institution; but, if the insolvency of the firm and contemplated bankruptcy was the cause, it would be another argument in favor of continuing in force this statute. If matrimony produces bankruptcy, it is all wrong; but, if bankruptcy produces matrimony, it is all right. The wife of P. S. Steed speaks of a contract by which he was to allow her $10 per month, entered into soon after they were married, in 1891; but this contract seems to have fallen into "innocuous desuetude." Neither kept an account, or can tell how much has been paid. She supposes he has paid as much as a hundred dollars prior to the time Steed & Curtis commenced business, or since they were married. This she used for her personal expenses. Besides this money, he has given her a house and lot on Saunders street during the year 1900, but her money was not used to pay for it or any of the material used. Her testimony contradicts that of her husband in many respects, and the testimony as to this contract does not inspire much confidence of its existence at any time. This is a voluntary petition by the firm of Steed & Curtis, and much of the testimony taken is as to the property of the individual members of the firm. The two are recognized under the bankrupt act as distinct legal entities. The charge in this exception or objection is a serious one, if supported. "Making a false oath or account in, or in relation to, any proceeding in bankruptcy" (section 29b, cl. 2), are crimes punishable under the act. Schedules purport to give a full, true, and correct statement of the assets and liabilities. When a creditor alleges they do not do so, the allegation should be definite and certain. General averments are not sufficient. If true, this general objection, properly set forth, might constitute probable cause, upon which a committing magistrate would hold the petitioners. Proof beyond a reasonable doubt, as contended, is not required, but the proof should be clear and satisfying. To ignore such facts, if properly stated, would be to disregard the statute, and do a manifest injustice to creditors. The punishment is by imprisonment not to exceed two years; hence can only be tried by indictment. Ex parte Wilson, 114 U. S. 422, 5 Sup. Ct. 935, 29 L. Ed. 89; Mackin v. U. S., 117 U. S. 348, 6 Sup. Ct. 777, 29 L. Ed. 909. To say petitioners are guilty of the offense upon the record, in their absence, and without the intervention of a grand and petit jury, would be to deprive them of one of the most valued and jealously guarded rights under the constitution and laws. This the court will not do. But, where there seems to be probable cause, the court will refuse to grant a discharge, hold the matter in abeyance until the matter can be investigated regularly, and submit the record to the proper tribunal. With this view, the petition for final discharge may be temporarily refused.

3. The conveyance to the wife of P. S. Steed of a lot purchased and paid for out of the assets of the firm, which should have been scheduled as one of the assets. The title to this lot is in Mrs. Steed, and a court of equity would, under the circumstances, probably adjudge it to belong among the assets, the wife being a trustee only. This must be done in the proper court having jurisdiction. This court cannot grant the relief, or entertain a suit for that purpose. Bardes

v. Bank, 178 U. S. 524, 20 Sup. Ct. 1000, 44 L. Ed. 1175. The referee made an order authorizing the trustee to prosecute a suit in the state courts to this end. This order is affirmed.

4. Refers to a homestead allotted to J. S. Steed, but, as this proceeding does not include the individual estates, the question of a homestead for the individuals does not arise. The objection seems to be well founded in law, but does not arise in this proceeding, wherein the assets of the firm only are administered; but the facts may have a bearing on a question of personal property exemption, to be considered later.

5. That within 10 days just prior to the filing of the petition Steed & Curtis disposed of a valuable stock of goods, etc., valued at $4,000, at a sacrifice of 20 per cent., for which they received $2,500 cash and a note of the purchaser for the balance of the purchase money; and less than $900 passed into the hands of the trustee, over $1,600 having been paid out by petitioners' attorney to relatives, friends, and favored creditors in contemplation of bankruptcy, etc. This was a transaction which cannot receive the sanction of a court of bankruptcy. It was void as a preference, being within four months, and under proper proceedings the transaction would have been so declared. That a remedy exists for such wrongs, there can be no doubt, and it seems an active, vigilant trustee or creditor would have found the remedy; but nothing yet has been attempted along this line. The sale seems from a legal standpoint, or the surroundings are such, that a court may reasonably infer the transaction was in contemplation of bankruptcy, and in fraud of the act. Sale nine days before the petition was filed; the large discount; the haste with which favored creditors, including the attorney, were paid,—all point to a fraudulent intent. The sale was void. It is not, however, for this court to suggest a remedy, or to decide questions not presented, but it can and will hold the estate until the trustee seeks the remedy, if creditors aid and sustain him in so doing. While not one of the grounds on which a discharge may be refused, it is supported by such facts as will warrant the court in postponing a consideration of the petition in the interest of justice, equity, and right until the bankrupts may, if they can, satisfy creditors having claims by a surrender of property, such as is contemplated they shall do when they seek the benefits under the bankrupt act,—a discharge from their debts. The estate seems to be in a condition to warrant and even invite further litigation if those interested are so advised.

6. "That it appears from the evidence in these proceedings that the said bankrupts have not acted in good faith, and have not turned over and delivered to the trustee all of their property, as they are by law required to do." This objection is in general terms, but, if made specific, might be a valid reason for refusing a final discharge. The examination of witnesses is so unsatisfactory that it is impossible to determine whether the charge be well founded or not. Personal property—furniture, etc.—seems to have been purchased with the firm's assets within 30 days of the bankruptcy for bankrupt's family, and simply claimed to have been given to them. Such gifts,

the donor being insolvent, are not favored. Further testimony should be taken on this point, and permission is given the trustee to proceed as he may be advised to collect the assets of the estate. The reference to the referee to hold the final meeting of creditors under Dist. Ct. Rule 8, and the allowance of a fee therefor, constitute him a special master for this purpose, and is supported by authority. Fellows v. Freudenthal, 4 Am. Bankr. R. 491, 102 Fed. 731.

Checks are sent up to be countersigned, allowing each of the partners a personal property exemption of $500,—J. C. Curtis, $470 cash, balance personal property; P. S. Steed, $484 cash, balance personal property. The constitution of North Carolina, as construed by the state courts, which the courts of bankruptcy follow, does not seem to contemplate this species of practice, which is too often attempted. Article 10, § 1. Money is personal property, and, if the debtor has the money on hand, he may elect to take his exemption in cash; but in allowing a personal property exemption out of the firm assets, even when both partners consent (In re Stevenson, 2 Am. Bankr. R. 230, 93 Fed. 789), it must appear the members of the firm have no individual personal property exemption exclusive of the firm assets. If they have such exemption, it cannot be allowed from the firm assets. The constitution does not contemplate two personal property exemptions. In the present unsatisfactory state of the cause, these checks cannot be countersigned, or the personal property exemption allowed out of the firm assets. Under further proceedings it may be shown the bankrupts have a personal property exemption exclusive of the firm assets. The facts should be further investigated, and for this purpose the whole case is remanded to the referee.