# CASES

## DECIDED IN THE

# SUPREME COURT OF GEORGIA

### AT THE

## MARCH TERM, 1921.

---

### ETHRIDGE v. PITTS et al.

1. In this State the superior court since first established has been the court of equity, and as such has had jurisdiction, on petition, to which minors were parties (plaintiffs or defendants), to render during term decretal orders authorizing guardians to sell the lands of their wards, whether held by legal or equitable title.

2. The court of equity was not deprived of such jurisdiction by the statutory adoption of the Code of 1863, which declared (§ 1779) that "All sales of any portion of the property of the ward shall be made under the direction of the ordinary, and under the same rules and restrictions as are prescribed for sales by administrators of estates." Nor did the incorporation of the same provision in the Code of 1868, § 1819, have such effect.

3. In a will probated in 1865, a testator devised a plantation consisting of some 1600 acres of land to his daughter during her life, "and immediately after the death [of his daughter] to go to and be vested in her child, children, or representatives of children, if any, surviving her." At that time she had two children, a daughter seven and a son five years of age. In 1867 another daughter was born to her. She never had other children. In 1867 a guardian was duly appointed by the ordinary for the persons and property of the three minors. In 1869, during a regular term of the superior court of the county of the residence of all the parties, where the land was situated, a judgment was rendered, upon the joint petition of the mother of the minors (the life tenant) and their appointed guardian, authorizing them, for the reasons alleged and shown, to sell at private sale to a named individual, and for its full value in cash, the entire interest or estate in some 200 acres of the land, situated at least a mile from the rest of the plantation, the proceeds of sale to be used in making necessary repairs on and in improving the balance of the plantation. Held, that the court had jurisdiction to render the judgment granting the power to sell; the facts submitted to

1

the court authorized such order; and the sale thereunder passed to the purchaser the legal estate of the remaindermen in the land, as well as the life-estate.

4. In view of the facts as agreed upon, and the rulings of law stated in the preceding notes, the trial judge, to whom the case was submitted without a jury, erred in adjudging that the remaindermen, under the devise referred to in the fourth headnote, were entitled to recover from the defendant, who is the devisee of the purchaser at the sale made by the life-tenant and the guardian in 1869 under the decretal order of the equity court.

No. 2254. SEPTEMBER 27, 1921.

Complaint for land. Before Judge Park. Jones superior court. September 3, 1920.

In his will executed in 1859, and probated in solemn form in June, 1865, Thomas W. Choate devised some 1600 acres of farm or agricultural lands, situated in Jones county, to his daughter, Mrs. Mary C. Pitts, during her life, and at her death "to go to and be vested in her child, children, or representatives of children, if any, surviving her." When the will was probated Mrs. Pitts had two minor children, Rebecca Elizabeth Pitts, about seven, and Peyton Thomas Pitts, about five years of age. Another child, Mattie Taylor Pitts, was born in June, 1867. Mrs. Pitts never had other children. Her husband having died, his father, Peyton Thomas Pitts Sr. was thereafter appointed by the ordinary of Jones county, in 1867, guardian of the persons and property of the three minor children of Mrs. Pitts, and qualified as such. During the regular October term, 1869, of the superior court of Jones county proceedings were had at the instance of Mrs. Pitts, the life-tenant, and Peyton T. Pitts Sr., as the next friend and guardian of the persons and property of her minor children, to obtain leave to sell a portion of the land covered by the devise above mentioned. These proceedings consisted of the joint petition of Mrs. Pitts, the life-tenant, and of Peyton T. Pitts Sr., as next friend and guardian of her three minor children, addressed "to the Honorable Philip B. Robinson, judge of the superior court of the Ocmulgee Circuit in said State," and praying, for the reasons set forth in the petition, for an order for the sale of lot of land No. 176, in the sixth district of originally Baldwin, now Jones county, which constituted a portion of the 1600 acres of land devised to Mrs. Pitts for life, with remainder in fee to her surviving children. The substance of so much of the petition as needs to be here stated

is to the following effect: When Mr. Choate executed his will, and at the time of his death, he owned a large quantity of land which was cultivated by his slaves; the land devised to his daughter for life, with remainder in fee to her children, consisted of about 1600 acres; the tenements on this land and practically all of the personalty of the testator were destroyed by Sherman's army in 1864; the slaves were emancipated; Mrs. Pitts and her three minor children have no property other than the land devised to them by the testator; they are unable to cultivate all of it; in its condition they can not rent it to others; the tenements and fences must be rebuilt, and petitioners need money with which to have this done and to carry on farming operations; they have no means with which to keep the taxes paid on all the land, and to keep it all would be burdensome to them; the lot No. 176 does not adjoin the balance of the 1600 acres, but is a mile from any of it, and about two miles from the main body of the plantation, it is average pine land without sufficient timber to keep it under fence for more than two years; petitioners have negotiated with one Newton Ethridge to sell him lot No. 176 at a fair price and greatly to the advantage of all having an interest therein; and "petitioners represent that all parties in interest are embraced in this petition, and that they have no other property than that devised by said will and as herein set forth." The prayer is for an order for the sale and conveyance of lot 176 by petitioners to Newton Ethridge on the terms agreed upon with him and as set forth, and that the proceeds of the sale may be used by petitioners in building necessary tenements, fences, repairing the farm and carrying on its operations generally, the residue, if any, to be invested in State bonds, or put out at interest in the sound discretion of the petitioners. The petition was not filed, no process was prayed for or attached. Service was acknowledged by both of the petitioners on October 20, 1869, which was during the term of the court; and on the next day; still in term, the following judgment was rendered:

"Jones Superior Court, October Term 1869.

"Upon hearing and considering the foregoing application it is ordered and adjudged that the said Mary C. Pitts and Peyton T. Pitts Sr., guardian of the minor children of said Mary C. Pitts, be authorized to sell said lot of land No. 176, in the sixth district

of originally Baldwin, now Jones county, containing 202½ acres more or less, to Newton Ethridge at and for the sum of $1600.00, it being shown that said sale is to the best interest of the said Mary C. Pitts and her children. It is further ordered that the said Mary C. Pitts and said Peyton T. Pitts Sr. be authorized and directed to execute unto the said Newton Ethridge good and sufficient titles to said land upon payment in full of said sum of money. It is further ordered that the said Mary C. Pitts and the said guardian be authorized to use said money in the improvement and repairing the other lands of said Mary C. Pitts derived under the will of her deceased father, Thomas W. Choate; and the clerk of the superior court of Jones county is ordered to spread upon the minutes of said court this application, order, notice, and other papers attached. October 21st, 1869. Philip B. Robinson, Judge Superior Court, Ocmulgee Circuit."

. On December 28, 1869, Mary C. Pitts and Peyton T. Pitts Sr., as guardian of her minor children, executed a deed to Newton Ethridge for the lot 176, in consideration of the sum of $1800 paid in cash, the deed reciting the material parts of the decree. Newton Ethridge went into possession of the lot, being the premises sued for in the present case, immediately after the execution and delivery of the deed to him, and remained in possession until his death in March, 1901. He died testate, devising the land to his wife, Delia Ethridge. The purchase-price, $1800, paid by Newton Ethridge, was the full value of the life-estate and remainder interest in fee to lot 176 at the time it was conveyed to Ethridge. Mrs. Mary C. Pitts, the life-tenant, died in November, 1913, leaving surviving her son, Peyton Thomas Pitts, and her daughter, Mattie Taylor Pitts. Her daughter, Rebecca Elizabeth Pitts, died in 1905, leaving several children. Mattie Taylor Pitts died in December, 1913, leaving children.

In September, 1914, Peyton Thomas Pitts, one of the remaindermen, and the children of Rebecca Elizabeth Pitts, as remaindermen, brought in Jones superior court this action in ejectment against Mrs. Delia Ethridge, for the recovery of the lot of land No. 176. The children of Mrs. Mattie Taylor Pitts did not join them in the suit. The judge by consent tried the case without a jury, and on an agreed statement of facts the material portions of which are hereinbefore set out. A judgment was rendered in behalf of the

plaintiffs and against the defendant for an undivided two-thirds interest in lot 176. It appears from this judgment that His Honor was of the opinion that the order for the sale of the land, granted in 1869, was void, because, " under the law and facts set out in the petition, which is a part of said agreed statement of facts in this case, that the judge of the superior court of said circuit had no authority to order the sale of the interest of the minors in the property in controversy, and said order which is attached to said petition, under the law as it existed at that time, in 1869, was void and did not authorize the sale of the interest of the minors in said property. At the time of the date of said order, in order to sell the interest of wards in property, the ordinaries only had the legal authority to empower such sale." The defendant excepted, assigning error on this judgment.

*F. Holmes Johnson* and *Willard W. Burgess,* for plaintiff in error.

*John R. L. Smith* and *Grady C. Harris,* contra.

FISH, C. J. (After stating the foregoing facts.)

1. Section 1779 of the Civil Code, which went into effect on January 1, 1863, declared: " All sales of any portion of the property of the ward shall be made under the direction of the ordinary, and under the same rules and restrictions as are prescribed for sales by administrators of estates." The same language was contained in the Codes of 1868, 1873, and 1882. The act of 1889 (Civil Code (1895), § 2545; (1910), § 3064), provides that " By order, in term or vacation, of the judge of the superior court of the county of the guardian's appointment, guardians may sell the whole or any part of the estate of their wards, for reinvestment, upon such terms and at such time and place as said judge may order." The following section provides for the publication of notice of the application for sale, and that the application shall describe the property sought to be sold, the reasons for making the application, the property in which the guardian wishes to reinvest the proceeds of sale, etc. The next section is as follows: " All other sales of any portion of the property of the ward shall be made under the direction of the ordinary, and under the same rules and restrictions as are prescribed for sales by administrators of estates." Except for the word " other " in the first line, this is the same language as that contained in the Codes of 1863, 1873, and 1882, as above

noted. Administrators may sell lands of their intestates when necessary for the payment of debts or for distribution under an order of the ordinary, granted upon petition setting forth the reason for the application, and on publication of the prescribed notice; and all such sales, except of annual crops sent off to market, and of vacant lands, must be at public outcry and to the highest bidder. In view of these statutes, did the judge of the superior court, in 1869, have jurisdiction, while presiding over a session of the court, on a petition then presented by a life-tenant and the guardian of minors owning a legal remainder interest in land, to grant, during term, a decretal order for the sale of such remainder by the guardian?

The superior court has been the court of equity in this State at least since the judiciary act of 1799, and the language used in reference to it by the constitutions, as in that of 1868, has been that " the superior courts shall have exclusive jurisdiction in    :    . equity cases." In *Beall* v. *Fox*, 4 *Ga.* 404, it was said: " The act of 1784 adopted the laws of England, adapted to our circumstances. The act of 1799 conferred equity powers on the superior courts, necessary to give to those laws a complete and practical application, for the benefit of the citizens of this State, in as full and ample manner as the same existed in Great Britain, for the benefit of the subjects of that kingdom. We have not only adopted the laws of England suited to our circumstances, but we have created the necessary judicial machinery to give to those laws a practical and beneficial effect; and such we understand to be the office and duty of a court of equity, and such we understand to have been the object of the legislature, in 1799, in conferring equity powers on the superior courts."

In *Jones* v. *Dougherty*, 10 *Ga.* 281, it was said: " We have not only adopted the whole system of English jurisprudence, common law, and chancery, suited to our condition and circumstances, but we have framed the necessary judicial machinery to give to that system a practical and beneficial effect, and that such is the office and duty of a court of equity, and such was the object of the legislature of 1799, in conferring equity powers upon the superior courts." And in *Mordecai* v. *Stewart*, 37 *Ga.* 375, it was said: " The equity jurisdiction was created by the act of 1799. (Cobb's N. D. 467; sec. 53 of the Judiciary Act.) It was a special grant,

and gave an exclusive jurisdiction.    It authorized the superior courts to 'exercise the powers of a court of equity' by such proceedings as were 'usual in such cases.' . . 'Generally equity jurisprudence embraces the same matters of jurisdiction and modes of remedy in Georgia as was allowed and practiced in England.'" Civil Code of 1863, § 3033, Ib. 1868, § 3045, and the language of this section is embodied in all subsequent civil codes.

As was said by Justice Story, the origin of the jurisdiction in chancery over the persons and property of infants is quite obscure, and has been a matter of much juridical discussion. "But whatever may be the true origin of the jurisdiction of the court of chancery over the persons and property of infants, it is now conceded on all sides to be firmly established, and beyond the reach of controversy. Indeed, it is a settled maxim that the King is the universal guardian to infants, and had, in the court of chancery, to take care of their fortunes." 3 Story's Eq. Jur. (14th ed.) §§ 1743, 1752. In 14 R. C. L. 269, § 43, it is said: "But it is also within the inherent and comprehensive power of a court of general equity jurisdiction, according to the great current of American decisions, to sell the land of infants lying within its jurisdiction when such sale is necessary. . . . The clearest case for the exercise of such a power is when the sale is necessary to procure funds for the infant's proper maintenance and education; and the weight of authority seems to be that it does not extend to sales merely because it appears to be for the general interest of the infant, though there is not lacking very respectable authority for the power to sell real estate when shown to be for the manifest interest of the minor. The jurisdiction does not spring from, nor is it dependent upon, the character of the estate, whether absolute or contingent, whether in possession, or the possession postponed until the happening of a future event. It rests upon the power and duty of the court to protect infants, to take care of and preserve their estates while under disability debarring them from the administration of property. The courts would be more reluctant to decree the sale of an estate in remainder, or of a contingent estate, lest it might operate a sacrifice of the interests of the infant; but the jurisdiction exists even as to such estates, though it may be more seldom and more sparingly exercised, and

it has been held that such a sale could be made though contingent interests were vested in persons whose residences and names were unknown, or even in possible children yet unborn." See also 21 C. J. 121, § 99. Many cases are cited in support of the text quoted, and a few to the contrary of some portions thereof. Other text-writers, and many adjudicated cases might be cited to the same effect. " In general it may be said that in all the States having the complete equity system, the original jurisdiction of chancery must be considered as remaining in full force and effect, notwithstanding the jurisdiction given to the probate courts, unless the constitutional or statutory provisions creating these courts, by express, negative, prohibitory language, take away the former chancery jurisdiction, or unless by these statutes the probate jurisdiction is given in such affirmative and exclusive language as to raise necessary implication that it was the intention to displace the former corresponding chancery powers." 21 C. J. 120, § 98, n. 63. Statutes abridging the jurisdiction of courts of equity must be strictly construed.

This court has decided a number of times that a judge of the superior court, at chambers, was without authority, prior to the act of 1889 (Civil Code of 1910, § 3064), upon a petition then presented, to order a sale of the legal estate of minors in realty, although it may be represented as beneficial to them. *Webb* v. *Hicks,* 117 *Ga.* 335 (43 S. E. 738), and cases cited; *Morehead* v. *Allen,* 131 *Ga.* 807 (63 S. E. 507), and cases cited; *Powell* v. *Heyman,* 143 *Ga.* 728 (85 S. E. 891). These decisions were evidently based mainly upon the grounds that chancery jurisdiction in this State was conferred upon the superior courts, not upon the judges thereof, and that the judges acting in vacation were not courts of equity (*Milledge* v. *Bryan,* 49 *Ga.* 397), because " The judges of the superior courts of this State can do no act nor grant any decree in vacation unless it be authorized by statute (*Rogers* v. *Pace,* 75 *Ga.* 436), and because " The power of a judge of the superior court to authorize, in vacation, a sale of the legal estate of a minor can be derived only from a statute" (*Mitchell* v. *Turner,* 117 *Ga.* 958, 960, 44 S. E. 17).

In *Milledge* v. *Bryan,* 49 *Ga.* 397, it was said: " The general rule was by application to the court of ordinary." In *Knapp* v. *Harris,* 60 *Ga.* 398, 403, it was said: " Equity may, in some cases,

interfere with the administration of the estates of deceased persons, or direct the management and disposition of property belonging to minors; but, generally, executors, administrators, and guardians are to resort to the court of ordinary for orders of sale, and such judgments as are necessary to supplement their general powers." From these quotations it appears that the jurisdiction of a court of equity — the superior court — to order the sale of a minor's property was not entirely taken away by the section of the Code authorizing ordinaries to exercise such power. In *McCamy* v. *Higdon*, 50 *Ga.* 629, it was held: " A deed purporting upon its face to have been made by the guardian of a minor, under the authority of a decree of the superior court, is inadmissible in evidence without the production of said decree." There is a clear implication that if the decree had accompanied the deed the instrument would be admissible; and further, that a decree of the superior court authorizing a guardian to sell his ward's estate was valid.

The decisions holding that the judge of the superior court had no power to grant an order to a guardian to sell the legal estate of his ward all stressed the point that the judge had no power to grant such order in vacation, and on a petition presented in vacation, thereby raising the strong implication that if the petition had been presented to the judge when he was presiding over a session of the court, and he had granted an order for such sale during term, it would have been valid. As was said in *Richards* v. *East Tenn. &c. Ry. Co.*, 106 *Ga.* 614, 634 (33 S. E. 193, 45 L. R. A. 712), " As far as this court has ever gone is to declare that the chancellor has no power to grant, at chambers, an order for the sale of the legal estate of minors." It has never since gone further.

There are several decisions of this court to the effect that by a decretal order of the superior court, granted during a session thereof, upon a petition to which the minors are parties, plaintiff or defendant, a guardian may be authorized to sell the lands of his minor ward, whether held by legal or by equitable title. In *Rakestraw* v. *Rakestraw*, 70 *Ga.* 806, the will of the testator was probated in April, 1878. The widow was named as executrix, and qualified. Certain realty was devised to the widow for life, with remainder to testator's children. She filed a bill in her own

right, and as next friend of the six minor children of the testator, making his three adult children defendants, and alleging that the rents, issues, and profits of the land so devised were not suffi-cient for the support of herself and the minor children. The prayer was that she be allowed to sell such land or a portion thereof for the support of herself and the minor children. It was held (in 1883) that it was "competent for the life-tenant to waive the life-estate in the property devised; and this would vest the whole estate in the children; and it would be in the power of a court of equity to decree a sale of the whole or a part of the property for the support, education, and maintenance of the children, and the support of the widow. The court could hear evidence as to the probable value of the life-estate, and decree to the widow such sum as would be equal thereto, and could, by proper order protect the remainder for the use of the children, or decree that the same be turned over to the guardians of the minors and to those children who have become of age." Also: "An amendment should be made specifically setting forth the property constituting the estate held by the widow, and stating her willingness to surrender her life-estate." And "It seems to be the policy of the law to provide for the support of the widow and minor children, and the court should in all proper ways for-ward and carry out this policy." That was a clear-cut holding that a court of equity could grant an order for the sale of the legal estate of minors.

In *Sharp* v. *Findley,* 71 *Ga.* 654, the executor of a will filed a petition, to which legatees were parties, and minor legatees were represented by a guardian ad litem, praying for an order, at chambers, for the sale of the realty of such infants. Chief Justice Jackson in delivering the opinion (at page 665) said: "The very minute this petition came before this chancellor and disclosed the fact that the land of infants was involved, his wards were before him, and the case was concerning 'an estate of the wards of chancery.' The case was made where these wards were suffering or likely to suffer; where their property must be changed, so as to realize for them the necessities of life; and it was necessary that his protective powers be exercised to make such decree as would relieve that necessity, and at the same time protect the estate by looking to the reinvestment and preserva-

tion of the fund. Again, the 'proceedings' to 'be had therein' are to be such 'as the necessity of each case may demand.' Of that necessity he is the judge and the only judge. If the infant be not safe in his breast, where shall he look for help? If chancery protect not its wards, what guardian, what law, can protect them? I had rather confide an infant to the custody and care of an honest judge than to any jury ever sworn to find facts and apply law."

In *Mitchell* v. *Turner,* 117 *Ga.* 958, it was said (at page 963, referring to the above quotation from *Sharp* v. *Findley*) : "The language of the Chief Justice is manifestly sound as applied to applications filed in term, as were those in the *McGowan* and *Richards* cases, supra, and it was with reference to such applications that those cases approved the language used in *Sharp* v. *Findley.* The language, when applied to proceedings instituted in vacation, is opposed to the rulings made in many cases, both before and after the *Sharp* case, and it has never been followed in a case where the proceedings were had and the order of sale granted at chambers."

*Richards* v. *East Tenn. &c. Ry. Co.,* 106 *Ga.* 614, was an especially well-considered case, as will readily appear from a perusal of the majority opinion delivered by Justice Lewis, and the dissenting opinion by Chief Justice Simmons. As several rulings made by the majority in that case bear directly on and control questions involved in the case at bar, we quote the following headnotes from the majority opinion:

"1. The jurisdiction of equity over the estates of wards of chancery is broad, comprehensive, and plenary.

"2. When one holds title to realty in trust for the benefit of a mother and her minor children during the life of the mother, but is not clothed with the title to the legal fee in remainder which vests in the children, he may apply to a court of equity for a sale of the entire property, including the legal as well as the equitable estate, the purpose of the application being for the benefit of the children as well as the mother. The moment such an ex parte petition comes before the chancellor and discloses the fact that the legal as well as the equitable estate of infants is involved, they become his wards, and the case is one concerning 'an estate of the wards of chancery;' and accordingly the chan-

cellor has jurisdiction to grant in term an order to sell the entire property, the minors being properly made parties and represented before him.

" 3. The petition of the trustee for the sale of the premises in dispute having been made and passed upon prior to the act of 1876, requiring personal service on minors, the appointment of a guardian ad litem for them, and his appearance and answer to the petition, were sufficient to give the court jurisdiction of their rights.

" 4. Where such a trustee petitions for the sale of the entire property embraced in the conveyance to him, for the purpose of supplying the immediate necessities of all the beneficiaries, including the children, and of making permanent investments for their benefit, an order granted to sell the property in accordance with the petition in effect directs an absolute sale of the entire estate, both legal and equitable. . .

" 5. Since the first code went into effect on the 1st of January, 1863, it has never been necessary, in order to give the chancellor jurisdiction to direct a sale of the legal and equitable estate of minors in the same property, that a regular proceeding in equity be instituted; but such a sale may be ordered by the judge without a jury, upon an ex parte petition, and at the term of the court when the petition is filed or presented.

" (*a*) In the absence of any legislative provision to the contrary, it would seem that equity has inherent jurisdiction to order a sale of the legal estate of minors for reinvestment, whenever to the minor's interest. Be this as it may, the present case is distinguishable from one where the sole purpose is to sell such an estate for reinvestment. This is so because the petition for sale now under consideration involved equitable rights over which the superior courts of this State clearly had jurisdiction.

" 6. Where such a petition had entered thereon ' January adjourned term, 1871,' and the order of sale had entered on it at the place of the judge's signature, ' January adjourned term, May 12th, 1871,' and it appeared that the judge was actually on that day holding a regular session of such adjourned term, this was sufficient to authorize the presumption that the order in question was granted in open court, during its regular session in the transaction of term business, and was therefore a proceeding in term and

not at chambers. The facts, that the petition was not filed, that the case was not entered on the regular docket of causes for trial, that no process was attached to the petition, and that the order of the sale directed a record of the proceedings on the minutes, as is usually the case when such orders are granted at chambers, were not sufficient to overcome this presumption; especially in view of the principle that the court should adopt that construction which treats the order as completely legal, and not as partially illegal and to that extent void.

"7. Even if the proceedings to sell the property were defective on account of the omissions to file the petition, attach process, and docket the case, these were mere irregularities which did not render void the judgment of a court that had jurisdiction over the persons and subject-matter of the suit; especially where the interests of innocent purchasers are involved, with whose rights equity is always loath to interfere."

In that case there was a trust estate for the joint use of a mother and her minor children during her life, with a legal remainder in fee to the children at the death of the mother. The main point in the case, however, was as to the power of a judge of the superior court to grant in term, upon a petition then presented to him, a decretal order for the sale of the legal estate in remainder of wards; and the majority of the court held, in effect, that the judge had jurisdiction so to do. This construction was placed upon the ruling in the *Richards* case, in Reed *v.* Alabama etc. Iron Co., 107 Fed. 586 (Circuit Court N. D. Georgia), wherein District Judge Newman delivered an able opinion, the headnotes to which, so far as are here relevant, being as follows:

"Under the law of Georgia, as settled by the decisions of its Supreme Court, a court of equity has inherent jurisdiction to order a sale of the legal estate of minors in real estate for reinvestment, where it is to the minor's interest, at least, when grounds exist, aside from the interest of the minors, which make it proper to invoke the jurisdiction of equity in the premises: . .

"2. Where an estate in remainder in comparatively unproductive property is vested in the children of the life-tenants who shall be living at the time of their death, and there are a number of such children in being, who are minors and in need of funds for their maintenance and education, a court of equity has the inherent

power, having before it the life-tenants and the remaindermen in esse, with their guardian ad litem, and on a proper showing, to render a decree for the sale of the property and the reinvestment of the proceeds so as to produce an income for the children; and such decree will bind children afterwards born, provided it has made proper provision for the investment and protection of their interests in the proceeds."

In line with the ruling covered in headnote 2, just quoted, is a decision of this court in *Cooney* v. *Walton,* 151 *Ga.* 195 (106 S. E. 167). There a testator died in March, 1913. The will devised certain realty to his wife for life, remainder in fee to his issue living at her death, and, if none, then to named persons. Included in the realty so devised was a city lot on which there were buildings in need of repair, and therefore could not be advantageously rented. The life-tenant brought suit against the only issue of the testator, an adult son, who was childless, and the contingent remaindermen named in the will, the purpose of the suit being to obtain a decree for the sale of the property, including every possible interest therein of contingent remaindermen in being or any possible future issue of the testator's son, for reinvestment under the same limitations provided in the will. It was held that the court had jurisdiction of the parties and the subject-matter, and that the decree rendered authorizing the sale as prayed for was binding upon all parties to the suit, and upon any unborn issue of the son of the testator, who might be in life at the death of the life-tenant. The rulings in this case were followed in *Donaldson* v. *Donaldson,* 151 *Ga.* 208 (106 S. E. 272).

In *Palmer Brick Co.* v. *Woodward,* 135 *Ga.* 450 (69 S. E. 827), this court construed the *Richards* case, 106 *Ga.* 614, as holding in effect that a judge of the superior court, on a petition presented during term by a guardian for the sale of his ward's legal estate, had jurisdiction to grant, during a session of the court, a decretal order for the sale. In that case Howell, in 1876, conveyed certain land to Woodward in trust for the sole and separate use of his wife " during her life, and then to her children, if she should leave any, by her present or any future husband." In 1896 an application addressed to the judge of Fulton superior court (the land lying in Fulton county), " exercising jurisdiction in chancery therein," was made by Woodward, calling himself trustee,

for an order to lease the property conveyed in the deed, for twenty years, to the Palmer Brick Company for it to use the clay in the land for making brick, and for other purposes. The life-tenant acknowledged service on the petition, and stated therein that she united with the petitioner in the application, and requested the court to grant the same. The minor remaindermen were served, and a guardian ad litem was appointed for them, who recommended the granting of the order, as it would be for the best interest of the beneficiaries. The order as prayed for was granted in term. It was, among other things, held: "the petition having been considered and passed upon in term time, the minors [represented by guardian ad litem] became wards of chancery, and the order granting the application to lease the property was binding upon the defendant in error" (a remainder-man). "This is true although the deed may have created no valid trust and the remainder estate conveyed to the minors was a legal estate. . . The minors having duly been served and being represented by a guardian ad litem, who filed an answer in their behalf, and the proceedings being in term time and the minors having become wards of chancery, the absence of process did not vitiate the proceedings. . . The contract of lease made was authorized by the terms of the order. . . The court erred in granting an injunction restraining the plaintiff in error 'from mining, digging, or removing any soil, dirt, or clay from the premises described in the petition."

It is clear that the deed involved in that case did not create a valid trust for Mrs. Woodward, as it was executed in 1876, when she was sui juris under the act of 1866, and no trust could there-fore be created for her. No attempt was made to create a trust for the remaindermen. The life-estate of Mrs. Woodward was a legal estate, as was the estate of the remaindermen. That decision is directly applicable to the case at bar. It was not founded upon the act of 1889, and could not have been based upon that act (Civil Code (1910), § 3064), because it was not a sale for reinvestment, but a lease the proceeds of which were to be consumed in their use. The decision does not refer to that act. The fact that the order of the judge of the superior court, granted during term, authorized a lease for twenty years of the land (in which the remaindermen had a legal estate), to be used for the manu-

facture of brick, could not, of course, differentiate, on principle, such order from one authorizing a sale of the legal interest of the remaindermen in the land. While the remaindermen in that case, who had no general guardian, were represented by a guardian ad litem when the order for the lease was granted in term, there was no necessity for a guardian ad litem in the case at bar, wherein the order for the sale of the land was granted in term, for the reason that the minors were represented by the guardian duly appointed for their persons and property by the ordinary. In the cases we have cited in support of the doctrine that a judge of the superior court, on a petition presented while he is presiding over a session of the court, by a guardian for the sale of the legal estate of his ward, has jurisdiction in term to grant an order for such sale, — we say that in such cases, the orders for the sale so granted by the judge of the superior court were passed since the Civil Code of 1863, wherein first appeared the section that " all sales of any portion of the property of a ward shall be made under the direction of the ordinary, and under the same rules and restrictions as are prescribed for sales by administrators of estates," and, with the exception of the *Woodward* case, prior to the passage of the act of 1889, authorizing judges of the superior court to grant, either in vacation or in term time, orders for the sale of a ward's property for reinvestment. It clearly appears, therefore, that this court in none of the cases cited was of the opinion that the section of the code, as to ordinaries granting orders to guardians for the sale of the estate of their wards, deprived the superior courts, as courts of equity, of the jurisdiction to grant, during term, on petition then presented, decretal orders for the sale of the estates of wards, whether legal or equitable. Judge Powell in his excellent work " Actions for Land," § 254, and at p. 320, says: " Minors are wards of chancery. The jurisdiction of equity over the estates, both legal and equitable, of wards in chancery is broad, comprehensive, and plenary. The superior courts are the courts of equity in this State. Hence, by a decree of the superior court, granted during a session of the court, upon an equitable petition to which the minors are parties (plaintiff or defendant), a guardian may be authorized to sell the lands of his minor ward, whether held by legal or by equitable title."

There were controlling reasons why the court of equity, and not the ordinary, had jurisdiction to grant the order for the sale of the land involved in this case. The land, as we have seen, was devised to the widow for life, with remainder to her surviving child or children. She and her children, all of whom were minors of tender years, had practically no other property than their interest in the devised lands, which constituted a plantation of some 1600 acres, the tenements on which had been destroyed by Federal troops during the then recent war; and the fences thereon needed rebuilding, in order that the lands could be rented and the widow and children supported. The duly appointed guardian for the minors and their mother, the life-tenant, found a man, Newton Ethridge, who was able and willing to purchase the lot, 176, which was not contiguous to the balance of the plantation of some 1200 acres, but situated a mile therefrom, and to pay the full value of the entire interest therein — the life-estate of the widow and the remainder estate of her surviving child or children. There was an actual necessity, in view of the circumstances, that the lands be put in condition to be rented, that money for the maintenance of the widow and children could be secured. She and the guardian evidently believed it would be best for all interested in the lands that the entire interest in lot 176 be sold to Ethridge at private sale, for the prearranged price, the full value of the entire interest. The ordinary did not have jurisdiction to grant an order for such a sale. The only power he had under the statute was to grant an order to the guardian to sell the legal estate in remainder of his wards in the land at public sale to the highest bidder, and any prearranged agreement to sell to a particular person at a given sum would, if carried out, have rendered such sale voidable. Moreover, is it not clear that, at a public sale, to the highest bidder, of the legal estate alone of the remaindermen, it would, on account of the uncertainty of the life-estate, bring an uncertain and inadequate price? Such a sale would necessarily be speculative. As it happened, the widow, who owned a life-estate in lot 176, sold under order of the superior court, lived for about 44 years after the sale. Of course, she might have lived only a very short time. All of such uncertainty as to price was avoided by the widow and guardian uniting in an application to the court of equity for

leave to sell the entire interest in the land to a named person for its full value.

Again, the jurisdiction to order the sale of the minors' estate was improper for the ordinary, and proper for chancery, because the minors did not have a clear and fixed title, but a title affected by the chances of survivorship, and because there was a contingent remainder to unborn children. The devise was to the widow for life, and at her death to such child or children or representatives of any as might survive her. Under the devise any child or children of the life-tenant living at her death, or the descendant or descendants of such, would be entitled to share in the lands devised. One child was born in 1867, after the probate of the will, and survived the life-tenant; there might have been others.

The ordinary did not have jurisdiction, upon the joint petition of the life-tenant and the guardian of the minor remaindermen then in life, to grant an order of sale of lot 176 which would convey the contingent remainder of unborn children; but this court and others have decided that a court of equity could grant a decretal order in a proper case to sell the contingent remainder of unborn children. *Cooney* v. *Walton*, 151 *Ga.* 195 (106 S. E. 167), and cases cited; *Donaldson* v. *Donaldson*, 151 *Ga.* 208 (106 S. E. 172) ; Reed *v.* Alabama &c. Iron. Co., 107 Fed. 686, and cases cited.

We have reached the conclusion from the foregoing that the trial judge erred, in view of the agreed statement of facts and the law applicable thereto, in holding that the order of sale involved in the case was not valid and that the several plaintiffs in the court below were entitled to recover.

<em>Judgment reversed. All the Justices concur.</em>