25277. MARSHALL *v.* CITIZENS AND SOUTHERN NATIONAL BANK, guardian.

DECIDED JULY 10, 1936. REHEARING DENIED JULY 31, 1936.

*Rodney S. Cohen, Rodney S. Cohen Jr., James B. Hicks, J. W. Bloodworth,* for plaintiff in error.

*Hitch, Denmark & Lovett, Duncan & Nunn, Park & Strozier,* contra.

STEPHENS, J. The Citizens and Southern National Bank, as guardian of the property of Julian W. Marshall, filed in the court of ordinary its petition in which it alleged that the ward had come of age; and that it had faithfully administered the trust, and was ready to make a final return and to turn over to the ward all money and property belonging to him. It prayed for citation to issue for settlement of its accounts as guardian, and for letters of dismission from the guardianship. To the citation the defendant filed an answer objecting to the allowance of commissions and to the discharge of the guardian until a full accounting had been made with its ward. The substance of the material allegations of the answer was, that the bank, as guardian of the ward's property, had tendered to him five bonds of a church for $1082.50 each, due in 1948, with coupons attached, and five first-mortgage bonds of a college for $1000 each, due in 1948, with coupons attached; that said bonds were not the equivalent of cash, and if the bank purchased them the purchase was unauthorized by law, and the retention of them was illegal; that if they were purchased as alleged, it was without notice to him, without the appointment of a guardian ad litem to represent him, without notice to or service on his next of kin, without notice to the guardian of his person, and without authority of a proper order from the judge of the superior court; that he reached his majority on January 9, 1935, and was entitled to the amount paid for the bonds in cash, with interest from the date of purchase; that the commissions charged by the bank in its final return should not be allowed, for the reason that as guardian it had failed to perform its duty to the ward, in that it had failed, after repeated requests, to furnish sufficient funds to pay, during the months of March, April, and May, 1933, the tuition and board of the ward at the Citadel, a school in Charleston, S. C., in which the ward had enrolled, or to furnish him with the necessary school expenses for his maintenance and education, and he was obliged to discontinue

his education at the Citadel, by the failure of the guardian to furnish the necessary funds, although according to the return of said guardian for 1932 it transferred on April 4, 1932, $565.31 from income account to corpus account, which sum could have been made available for the purpose of paying the ward's education and maintenance at the Citadel; that the five church bonds now tendered to him were not the bonds originally bought, but the bank, which was trustee of these bonds, was also a creditor of the church for a sum in excess of $13,000, and the substituted bonds were materially different from the bonds originally held, in that the rate of interest was reduced from 5-1/2 per cent. to 4 per cent. for the first five years and 4-1/2 per cent. for the second five years, and whereas under the original bonds the debtor church was to take up annually a certain number of these bonds, under the substituted bonds the entire issue was to run for 15 years, and although the original bonds were first-mortgage bonds, under the new arrangement it was permitted that certain unsecured creditors, of which the bank was one, should be paid their unsecured claims before the maturity of the entire bond issue, and said exchange of bonds was without any authority whatever, was to the disadvantage of the ward and to the interest of the bank, and was contrary to the fiduciary relationship which the bank occupied; that the five college bonds were part of an issue of $1,000,000, in the mortgage securing which the bank was one of the designated trustees, and the purchase and retention of these bonds by the bank were antagonistic to the interest of the ward, the guardian occupying a dual position of trustee of the bonds and guardian of the property of the ward, and said investment was contrary to the obligations of its trust and of the fiduciary relationship which it occupied.

The bank demurred generally and on several special grounds. The defendant amended his answer, alleging that the college bonds and the church bonds were purchased without any legal order of the judge of the superior court, but if any order was signed by the judge of the superior court it was without any notice or service on him, a minor over fourteen years of age, and without any notice or service on his next of kin, and without any notice or service on the guardian of his person, and if any order was granted it was without the appointment of a guardian ad litem to repre-

sent him, and was granted on an application for the investment of trust funds in which he was interested, besides the applicant, without notice to him or accounting for its absence; that he has never had his day in court, nor has he had any notice of any proceeding authorizing the original investment in the church bonds or the college bonds, nor has he had any notice of any proceeding authorizing the change of the investment, or the reinvestment of the church bonds; that if any order of court authorizing the exchange of church bonds was obtained, it was obtained without the knowledge of the court that the bank was an unsecured creditor of the church in the sum of $13,150, and without the knowledge of the court that the extension of the maturity of the bonds would be to the decided advantage of the bank, in that it might collect its unsecured debt, which it could not have done if the bank, which was also trustee under the church-bond issue, had insisted on the rights of the bondholders requiring the church to live up to its original bond obligation; that the exchange of church bonds was to the present advantage of the bank and to the detriment of its ward, and the bank occupied inconsistent and antagonistic positions with reference to the college bonds and the church bonds, and in exchanging the church bonds dealt with the property of the ward for its own personal benefit, permitting the ward's estate to suffer in order that it might have an opportunity to repay to itself its unsecured debt due by the church, which fact was not made known to the court when it exchanged the bonds; that the dual position at times, and the triple position at other times, held by the petitioner disqualified it from handling the estate of its ward, and the purchases by it in this situation where there was a loss should be made good to the ward before it is discharged from its trust. It was further alleged that the bank as guardian purchased the college bonds from its subsidiary, the Citizens and Southern Company, which handled approximately $166,000 of the bonds, making a gross profit of $55 on the sale of each bond and a gross profit of $8821.47 on the bonds handled, and the Citizens and Southern Company made a profit of approximately $250 which ultimately went to the stockholders of the bank in dividends; that the Citizens and Southern Company made out of handling the five college bonds sold to itself as guardian a profit of $250 which ultimately went to the stockholders of

the bank as dividends; that the bank, through its stockholders, was the sole owner of the Citizens and Southern Company, the stockholders of the bank owning the entire beneficial interest of the Citizens and Southern Company and receiving all the profits earned by this company in dividends, that the Citizens and Southern Company was a corporation of Chatham County, Georgia, and was in effect the agent of the bank, its business consisting of dealing in investment securities, and the entire capital stock of the Citizens and Southern Company was owned by the stockholders of the bank, and a number of persons were directors and officers of both the company and the bank; that the purchase of the bonds by the bank from the company was in fact a purchase by the bank from itself, which transaction was against the public policy of this State and was illegal; that the bank dominated and operated the Citizens and Southern Company, which company was an agency or instrumentality or department of the bank, and the purchase of the bonds by the bank was a purchase from its own agency, and it was a breach of trust for the bank to purchase securities from the company which was in fact a department operated by the bank; that the bank failed to use sound judgment and ordinary care in the purchase and retention of these bonds, both issues being unsound for the investment of trust funds, being entirely new enterprises, dependent for the most part on voluntary contributions as the only hope of meeting either the interest as it matured or the bonds themselves as they matured; that the plaintiff has violated the obligations of its trust, and should be held accountable for the cash money received by it, with accrued interest which it illegally invested and retained, and which it now seeks, with the reduced value in each of said issues, to deliver to respondent.

To the answer as amended the plaintiff demurred generally and specially on a number of grounds which will be specified in connection with the rulings thereon. The court sustained the demurrer and struck the answer as amended. Evidence was introduced by the plaintiff, consisting of its annual and final returns, a copy of the petition to the superior court for leave to invest in the bonds, with the order of the court thereon, and a copy of the petition to the ordinary and of the order thereon allowing the substitution of the church bonds. The defendant proposed to introduce evidence as to the facts alleged in the stricken answer, which

the court refused to allow. The court directed the jury to return a verdict for the plaintiff, and entered judgment on the verdict. The defendant excepted to each of the rulings stated.

■ The first question to be considered is as to the validity of the order of the superior court authorizing the guardian to invest in the college bonds and the church bonds. It is not questioned that the property guardian is the proper person to file an application for an investment in securities which requires the sanction of the court. When such an application is filed by the property guardian, the court has jurisdiction. Generally no service on anybody is required, as no person beside the ward is interested, and he is represented by the guardian. The Code, § 108-417, relating to investment of trust funds, has been held to apply to funds held by a guardian. *Brown* v. *Wright,* 39 *Ga.* 96 (3), 101. Section 37-1303, which provides that in applications for investment of trust funds where any person is interested besides the applicant, notice to such person must be shown or its absence accounted for, does not apply to this case, because the ward is the real applicant though acting by guardian. Section 37-1304 provides that if minors are interested, "and they have no guardians, guardians ad litem shall be appointed and notified before the cause proceeds." The implication is that a guardian ad litem is not necessary for a minor who has a guardian. See *Callaway* v. *Bridges,* 79 *Ga.* 753 (4 S. E. 687); *Sanders* v. *Hinton,* 171 *Ga.* 702, 709 (156 S. E. 812); *Ethridge* v. *Pitts,* 152 *Ga.* 1, 16 (108 S. E. 543). However, another Code section provides that whenever a minor is interested in any litigation pending in any court in this State, and has no guardian, or his interest is adverse to that of his guardian, "such court may appoint a guardian ad litem for such minor, which guardian shall be responsible to such minor for his conduct in connection with such litigation, in the same manner as if he were a regularly qualified guardian." § 49-111. Here again the implication is that a guardian ad litem need not be appointed for a minor who has a regular guardian, except in case the interest of the minor is adverse to that of his guardian. Even in this case, where the conflict of interest does not appear on the face of the proceeding, the judgment would not be void for want of a guardian ad litem. Conceding that the answer shows that the guardian was more or less interested in the sale of the bonds, and that this

interest was not disclosed to the court, the judgment authorizing the investment could only be attacked directly and not collaterally. Code, § 110-708; *Schulze* v. *Schulze,* 149 *Ga.* 532 (101 S. E. 183), and cit.

What has been said in regard to the judgment of the superior court applies also to the judgment of the ordinary in allowing exchange of the church bonds. The court of ordinary is a court of general jurisdiction, and its judgments are not subject to collateral attack for error or even for fraud. *Bowen* v. *Gaskins,* 144 *Ga.* 1 (85 S. E. 1007) ; *Laramore* v. *Dudley,* 145 *Ga.* 102 (88 S. E. 682) ; *Copelan* v. *Kimbrough,* 149 *Ga.* 683 (102 S. E. 162).

No fraud is alleged in this case, if for no other reason, because there is no allegation that the defendant sustained any loss through the transactions of which he complains with reference to the bonds. He has avoided any allegation as to the value of the bonds when they were purchased or as to their present value. Grounds 6, 7, 8, 9, and 10 of the demurrer to the amended answer make the point that there is no allegation that the defendant suffered any loss in the transactions complained of. These grounds were properly sustained. The defendant asks for an accounting with his guardian, and sets up no item of indebtedness or money damage against the plaintiff. The defendant stands squarely and solely on his alleged right to reject the bonds and to receive cash in lieu thereof. Paragraphs 6, 7, and 8 of the demurrer relate to the allegations as to the exchange of bonds. Paragraph 9 demurs to the allegations as to the dual position of the bank as guardian and as trustee for bondholders, etc.

Paragraphs 11, 12, and 13 of the demurrer to the amended answer attack the allegations as to the relations between the bank and the Citizens and Southern Company, from which the bonds were bought. It is alleged that the stockholders of the bank were likewise stockholders of the company, that the two corporations had common officers, that the bank owned and dominated the company, and that the company was an agency or department of the bank. It is alleged that the company had its own charter. It is not alleged that the bank owned any stock in the company. It was not denied that the plaintiff was a banking corporation existing under the banking laws of the United States, and the company in its charter had a license from the State of Georgia to exist and operate

as a legal entity. The allegations are not sufficient to show a fusion of the two corporations, if indeed it is legally possible for a State corporation to fuse with a national bank. It is true in some cases that courts have held that the corporate entity may be disregarded. This is not universally true. See *Porter* v. *Wootten,* 51 *Ga. App.* 834 (181 S. E. 866). There was no error in sustaining these grounds of demurrer.

■ Paragraph 14 of the demurrer attacks the allegation that the guardian failed to use sound judgment and ordinary care in buying the bonds. As these investments were approved by the superior court, they can not be called in question in the present proceeding. This power of the superior court as to approving trust investments is unlimited as to the kind of securities which may be approved. If the judge makes a mistake of judgment and approves an undesirable security, there is possibly no remedy for that. Paragraph 15 demurs to the allegation as to the "reduced value" of the bonds, on the ground that it should be stated what the reduced value was, and what loss the defendant suffered. These grounds were properly sustained.

■ The original answer alleged that the commissions charged by the guardian, amounting to $830.27, should not be allowed, because the guardian failed to furnish the ward or the authorities of a school in which he had enrolled with sufficient funds to pay, during the months of March, April, and May, 1933, the tuition and board of the ward; and that he was obliged to discontinue his education and leave the school on account of his inability to pay his board and tuition, through the neglect of the guardian to furnish the necessary funds, although, according to a return filed in the court of ordinary, the guardian, on April 4, 1932, transferred from the income account to the corpus account the sum of $565.31, which could have been made available for the purpose of paying for his education and maintenance at the school. These allegations were challenged only by general demurrer. The ward had been placed in the school, presumably with the concurrence of his guardians, and while pursuing his education there he was abruptly forced to leave by the refusal of his property guardian, the plaintiff, to pay for his board and tuition. It is a serious matter to take or force a young man away from a school in the middle of the term or before he completes his course. It could result in an injury inesti-

mable in money. It is the duty of the guardian to furnish education commensurate with the circumstances of the ward; and this duty devolves, at least partly, on the guardian who has the control of the ward's money and property. Inasmuch as the injury, if any, done the ward by the conduct of the guardian as complained of can not be computed in dollars and cents, the remedy which the ward invokes here should be allowed. That is to say, the court should require an explanation of the guardian, and let the jury pass on its sufficiency, and determine whether the guardian's commissions or any part thereof should be disallowed. The only reason given by the defendant in error for sustaining this part of the judgment of the court is that the remedy for failure to take care of the maintenance and education of the ward is a proceeding before the ordinary for the removal of the guardian; and that if the guardian were removed for gross mismanagement in such a proceeding, his commissions would be forfeited. No reason can be seen why mismanagement of the guardian such as would authorize his removal would not be ground for denying him commissions in a final settlement of his accounts in the superior court on appeal from the court of ordinary. For the reason given in this division of the opinion the court erred in sustaining the general demurrer. Otherwise no error appears.

*Judgment reversed. Jenkins, P. J., and Sutton, J., concur.*