## CLARKE *et al. v.* ARMSTRONG *et al.*

Certain persons, claiming that they were members of an incorporated military company, which had no capital stock and which was not a commercial, trading, or ordinary business corporation, brought an equitable petition, alleging that the corporation had been virtually dissolved as the result of National and State legislation, and that petitioners were members of the corporation at the time of its dissolution. They charged that certain persons, acting as trustees of the corporation, were mismanaging the property, and that there was danger of loss of the same; and prayed for injunctive relief and the appointment of a receiver to take charge of the property; and that the property be sold and the proceeds distributed among petitioners and those who were members at the time of the dissolution of the corporation. *Held:*

1. The petitioners showed no such interest in the property involved in the controversy as authorized them to maintain the action.

2. The provisions of section 2245 of the Civil Code, relating to the disposition of the assets of a corporation which has been dissolved, do not apply to the disposition of the property of a corporation like the one involved in this controversy, it being a corporation for the accomplishment of certain public purposes, and not a trading or commercial corporation, where subscriptions for stock are required of its members and certificates of stock are issued.

No. 1890. FEBRUARY 17, 1921. REHEARING DENIED FEBRUARY 28, 1921.

Equitable petition. Before Judge Ellis. Fulton superior court. January 31, 1920.

Armstrong and others brought a petition against Clarke and others, in which, with the amendments, the following facts were alleged: In the year 1859 the Georgia legislature incorporated the Gate City Guard, the title of the act (Acts 1859, p. 382) being, " An act to incorporate the Gate City Guard of Atlanta, and to grant certain immunities and privileges to the members of same," and the named incorporators and their successors were given all the corporate powers deemed necessary for the purposes of a volunteer infantry corps. The number of men composing the corps should never exceed 80 privates, exclusive of commissioned and non-commissioned officers. The officers were to be a president and a secretary, the commanding officer being by virtue of his office the president. The immunities and privileges granted to the members and officers were to continue no longer than during membership in the corps. This charter was accepted, and the persons named in it organized under it and continued their organization until they entered the service of the Confederate Government in the war between the States. In 1881, when this military corps, the Gate City Guard, began to acquire property, certain of its members applied to the superior court for a charter, which was in that year granted, incorporating the applicants as " The Board of Trustees of the Gate City Guard." The object of this corporation was to hold and manage the property and funds belonging to the Gate City Guard. This last-named corporation was to have no shares or paid-in capital. The trustees were to serve for the term and in the manner provided for by the constitution and by-laws of the Gate City Guard. The petitioners prayed that they be incorporated for 20 years, with the privilege of renewal. The order to incorporate recited that it appeared that a petition had been filed by certain named individuals for themselves and successors, asking to be incorporated for the purposes above stated, and that the same

was in accordance with the requirements of law; and it was ordered that they be incorporated as prayed. Certain valuable real estate belonging to Gate City Guard was accordingly con-veyed to this trustee corporation. Debts having accumulated, a sale of certain property in the City of Atlanta was necessitated. Proceeds of this sale, after paying debts, was invested in other property on Peachtree Street, Atlanta. The charter of the trustee corporation expired by its time limitation, in June, 1901. In March, 1902, J. F. O'Neill and certain other persons filed a petition to Fulton superior court, setting forth that in June, 1881, the old charter of the trustee corporation had been granted; that the petitioners were the legal successors of the persons named in the original petition and order of incorporation; that the original charter had expired in June, 1901; that the Board of Trustees of the Gate City Guard held the title to valuable property; that petitioners desired to have said charter of the Board of Trustees, etc., renewed and extended for a period of 20 years from the expiration of said former charter, to wit, June 18, 1901, with certain additions and amendments added. In one paragraph of their petition it was prayed that the trustees should consist of nine members, to wit, the captain, the first and second lieutenants ex-officio, and the six other members to be elected at a meeting of the active enlisted members of the Gate City Guard; and it proceeded to set forth the details connected with the election of such trustees by the members of the Gate City Guard. It was further prayed, in another paragraph of the petition, that if the Gate City Guard should at any time disband, the trustees then in office should continue to serve, and preserve and take care of the property in their hands "until the reorganization is effected and recognized by said Board of Trustees." It was also prayed that the board be granted the power to elect such officers and make such rules for their government as they might see fit, but should not be permitted to sell any of the real property held for the benefit of the Gate City Guard, or invest in other property, without authority so to do by resolution adopted by a majority of the members of the Gate City Guard present at a meeting reg-ularly held. It was further provided, that a vote of two thirds of the members of the Gate City Guard, in which a majority of the trustees concurred, should be had before the trustees could

use the corpus of the estate, or incumber the same for any purpose ; that the Board of Trustees be given the power to collect the income from the property and hold the same subject to the disposition of the Gate City Guard, " and, upon being demanded by a majority vote of any regular or call meeting of said active company, shall be immediately turned over to said company by said board. "

On May 27, 1902, an order was passed by Fulton superior court, providing that " the charter of the Board of Trustees of the Gate City Guard, granted by this court on June 18, 1881, is hereby renewed and extended for a period of 20 years from June 18, 1901, the date of the expiration of said former charter, with all the rights, powers, and privileges contained in said former order of incorporation, except as the same may be enlarged, modified, limited, or amended by the provisions of the foregoing application, and such others as are by law incident to corporations of like character, and the persons above named and their successors are incorporated for an additional term of 20 years from June 18, 1901, under the name and style of 'The Board of Trustees of the Gate City Guard,' with all the rights, powers, and privileges hereinbefore referred to." After this last order was passed the Gate City Guard held a meeting and passed a resolution authorizing one Harwell, as their commissioner, to execute to the named board of trustees a deed conveying all the property of the company to the trustees; and Harwell executed such deed on June 13, 1902. After this conveyance the board of trustees decided to sell the real estate so conveyed to them by Harwell, and did sell it, and invested the proceeds in two lots on Houston Street, Atlanta, which it is alleged are now worth $100,000. Although the members of the Gate City Guard were not enlisted in the military service of the State for the two years from March, 1893, to some time in 1895, they kept up their organization under their charter, and with the exception of these two years they have been continuously a part of the military forces of the State up to 1916. After the formation of the 5th Regiment National Guard of Georgia, the company from the Gate City Guard belonged to that regiment and constituted Company L. On June 3, 1916, Congress passed what is known as the National defense act. This legislation was adopted by Georgia under the act of August 21, 1916. Section 61 of the

National defense act of Congress provided: "No State shall maintain troops in time of peace, other than as authorized in accordance with the organization prescribed under this act: Provided, that nothing contained in this act shall be construed as limiting the rights of the States and Territories in the use of the National Guard within their respective borders in time of peace: Provided, further, that nothing contained in this act shall prevent the organization and maintenance of State police or constabulary." The petition alleges that the Gate City Guard was dissolved by this act of Congress.

On August 5, 1917, the 5th Regiment, which included the members of the Gate City Guard as Company L, was drafted into the service of the United States under the selective-draft act of Congress, passed May 18, 1917. On July 13, 1916, Company L had been mustered into the service of the United States, and saw service on the Mexican border. In the year 1916, the board of trustees authorized Clarke, Harwell, and Silverman to incumber the Houston Street property, which they did by executing a loan deed for $21,000. This loan was made largely for the purpose of taking up a pre-existing mortgage of $10,000, and to enable the trustees to repair and improve the building. Clarke received a commission, it is alleged, of $2,000 for negotiating this loan. On April 24, 1917, the board of trustees, at the instance of Clarke, passed a resolution authorizing Clarke, Harwell, and Silverman to sell the Houston Street property for a sum not less than $65,000, which power has not yet been executed. It is alleged that this property is now worth $100,000, and that Clarke and others will sell it unless restrained.

The petition sets forth that the charter of the first board of trustees was void, because the superior court had not jurisdiction or power to grant such a charter; also that the second charter of the board of trustees was void for the same reason, and also because it purported to be an extension, or renewal of the first charter, but was not applied for before the expiration of the first charter. The deed from Harwell, as commissioner, to the board of trustees was alleged to be unauthorized, because the legislative charter of the Gate City Guard required that all contracts in writing should be signed by the president and countersigned by the secretary. It was alleged that certain of the petitioners were

members of Company L of the 5th Regiment, which company constituted the members of Gate City Guard, at the date of the act of Congress of June 3, 1916; that certain others of petitioners joined the company. later in that month and before it was sent to the Mexican border; and that the rest of petitioners enlisted in the company after its return from Mexico, but before it was drafted into the service of the United States by the act of Congress known as the selective-draft act of 1917.

Petitioners prayed that the corporation known as Gate City Guard be decreed to have been dissolved; that an injunction be granted against the defendants, to prevent any disposition of the property of the Gate City Guard; that a receiver be appointed; that the assets be converted into money and distributed equally among petitioners; that in the event the court should decide that the Gate City Guard has not been dissolved, the title to the property be declared and adjudged not to be in the board of trustees, but in the corporation; and that the judgment and decree of the court may declare in whom the title to the property rests.

General and special demurrers were filed by defendants on various grounds, among which were, that there is no equity in the petition; that plaintiffs have no right to maintain same; that the facts alleged do not show that petitioners have or ever had any such interest in the property as would authorize them to have the same sold and the proceeds divided among them. All demurrers were overruled by the court, and the defendants excepted.

*Brewster, Howell & Heyman, Mark Bolding,* and *Walter C. Hendrix,* for plaintiffs in error.

*R. R. Arnold, Lowry Arnold,* and *A. H. Davis,* contra.

Beck, P. J. (After stating the foregoing facts.) A reading of the foregoing statement of the substance of the pleadings in this case will disclose the fact that many important questions affecting military companies, both those which have been incorporated and those not incorporated, are involved:— questions affecting not only the property rights that may have been acquired by such companies or corporations, but affecting their very existence. But there is one controlling question; and the proper determination of that, under our view of the case as presented, will render the decision of the other questions in the case unnecessary.

The demurrer in the case, upon one ground, raises the point that

the petitioners below do not show that they have such an interest in the property involved in the controversy as authorizes them to maintain this suit. The petitioners' general contention is, that the act of Congress of June 3, 1916, called the National defense act, had the effect of superseding and destroying the State legislation granting the charter to the Gate City Guard, and that when the troops composing the guard were drafted into the service of the Government, they were thereby discharged from the militia, and the effect was to destroy the State military organization theretofore existing, as the members of that organization who went into the Federal service stood thereby discharged from the militia, according to the terms of the act; and that all those who failed to enter the service and take the oath were likewise discharged from the militia by the State Government through the Adjutant-General, and the effect of this was to leave the organization wholly without members. And they further insist that by no enactment prior to June, 1916, did Congress assume exclusive jurisdiction of organizing, arming, and disciplining the militia and of prescribing the discipline by which the State should train the militia, and never until the act of 1916 did Congress forbid the States from maintaining any other military organizations; and that therefore the Gate City Guard continued to exist up to June 3, 1916, at which time, by the enactment of the law referred to, the Gate City Guard as a military organization was effectively destroyed, and that the property then belonging to it was subject to be distributed according to the law controlling the assets belonging to corporations at the time of their dissolution, and that those members of the Gate City Guard who were members at the time of the dissolution were entitled to have the assets of the corporation divided among themselves equally, after the debts of the company were paid. They claim the right to this property under the provisions of the Civil Code, § 2245, as follows: " Upon the dissolution of a corporation, for any cause, all of the property and assets of every description belonging to the corporation shall constitute a fund — first, for the payment of its debts, and then for equal distribution among its members. To this end the superior court of the county where such corporation was located shall have power to appoint a receiver, under proper restrictions, properly to administer such assets under its direction." If the section just quoted did not

have the effect of giving to petitioners the right to have the property divided and to participate in a division of the same, then they had no right to maintain this suit. For, if the effect of the act of Congress relatively to the continued existence of the company was as petitioners contend, nevertheless, if upon its dissolution they were not entitled to have the property distributed among those who were members at the time of the termination of the existence of the company, they have no standing in court for any of the purposes sought by their petition. And we do not think that section 2245 of the Code, above quoted, is applicable in case of a dissolution of a corporation like the one under consideration here. The expression, "equal distribution among its members," has not the controlling force attributed to it in the argument of counsel for defendants in error, where it is insisted that the provision for "equal" distribution shows conclusively that the statute is applicable to corporations like that involved here; but as the statute was intended to make provision for the distribution of the assets of corporations generally, where certificates of shares of stock are issued and held by the members of the corporation, the word "equal" must imply, not absolute equality of amount, but equality of right entitling each member to an amount payable from the proceeds of the assets of the corporation proportionate to his interest in the corporation's property or to the amount of the shares of stock held by each member.

From the statement of the facts in the case of *Mason* v. *Atlanta Fire Company, 70 Ga.* 604 (48 Am. R. 585), it appears that Mrs. Mason filed her bill on behalf of herself and her minor children against the Atlanta Fire Company, alleging, in substance, as follows: In 1850 the company was incorporated by the legislature, under the name of the Fire Company of the City of Atlanta. They were to elect their own officers, who were to be commissioned by the Governor. The members, not exceeding thirty in number, were to be exempt from jury duty, and, except in case of war, from militia duty. The length of time for continuance of the corporate privilege was not prescribed. By the act of 1854 the membership was increased to sixty, and the name changed to the Atlanta Fire Company No. 1. Perpetual succession was given, with the right to have a seal, to sue and be sued, to form a constitution and adopt by-laws. They subsequently adopted a constitution and by-

laws, which provided for the election of members, their duties, their expulsion, the dropping of them from the roll for delinquencies, the election of officers, etc. No provision was made, either in the charter or in the constitution and by-laws, for the acquisition of property; but from the collection of dues from the members and by voluntary donations, fairs, festivals, excursions and other public and private entertainments, a considerable amount of money was raised and invested in real and personal property for the use of the company. Mason, the husband of complainant, had been a member of this company, and by his zeal, skill and energy he contributed more to the creation of this fund than any other member. He died in October, 1867, being at that time an active member in good standing, with all his dues paid and a clear record on the company's books. In 1882 the system of fire service in Atlanta was changed, the volunteer service being discontinued and a paid department being organized. This company, therefore, was dissolved, or at least the object of its incorporation ceased. They had sold their personal property for an amount not known to complainant, and their real estate for $10,000, and the living members of the company were about to distribute the money without regard to the rights of the widows and orphans of deceased members. But it was charged that if the fund was so distributed, it would, in a large measure, go into the hands of persons who were insolvent and could not respond to any judgment complainant might recover. She prayed for an accounting between living members and the representatives of deceased members, for the appointment of a receiver to take charge of the fund, and for injunction to prevent its being paid out until the rights of complainant could be ascertained. Defendant demurred to the bill, (1) because complainant disclosed no right in herself to assert the supposed cause of action, and (2) because there was no equity in the bill. In the course of the decision in the case this court, after pointing out that the Atlanta Fire Company was not a trading, commercial, or ordinary business corporation, or anything like it, that its property was acquired, not by subscriptions paid by its members who took certificates of stock, but by donations made by public-spirited and patriotic citizens (for, whether the contributions came through fairs, concerts, or otherwise, still they were donations for a public object), said: "The view we take of this case renders it un-

8

necessary to determine whether this is a public or a private corporation; whether it is dissolved by the change and transfer of the services it was created to render, to others authorized by the public authority to perform them, or whether it still exists as a body corporate, although it has ceased to render the services for which it was created or to exercise any of its franchises, . . or what will become ultimately of the property belonging to the corporation, upon its dissolution or the forfeiture of its charter. The only question we need to determine is as to the right of these complainants to participate in its property during its existence, or after its dissolution." And then, after discussing certain authorities and decisions from other courts, this court ruled that the complainant had no right to participate in the fund either during the existence of the corporation or after its dissolution. And in the case of *Cummings* v. *Hollis,* 108 *Ga.* 402 (33 S. E. 919), a case involving in part the property of the Gate City Guard of Atlanta, the company whose property is here involved, it was ruled: "When persons claiming to be members of an incorporated military company which has no capital stock, but ,has acquired property by donation, file an equitable petition seeking to obtain control and management of the affairs of the company so incorporated, and allege that the company was, for non-compliance with law, disbanded by an order passed by the Governor of the State pursuant to a statute, and that the members of the company, including the plaintiffs, acquiesced in such order and ceased to exercise military functions, *Held,* that the case so made does not entitle petitioners to the relief sought, and the petition was properly dismissed on demurrer." And in the opinion in that case it was said: "The corps [the Gate City Guard] was organized and incorporated for military duty, and for nothing else; and when it ceased to perform military duty under the laws of this State, the purposes of its incorporation were at an end, and its charter was subject to forfeiture for non-user, under the general law providing for forfeiture of charters. Civil Code, § 1883. The petitioners seek to have the property of the corporation placed in the hands of a receiver until the court should hear and determine to whom the possession of the property belongs, and by the offered amendment they pray to have the property sold and the proceeds divided pro rata among the parties entitled thereto, as set out in the

petition.  There are two reasons why none of the prayers of the petitioners could have been granted.  The first is, that the petition shows on its face that the persons seeking relief are not members of the Gate Guard and are not entitled to any of the rights or privileges conferred by the original charter.  The only design in the creation of this corporate body was that its members, as a volunteer military organization, should become a part and parcel of the military forces of the State of Georgia, and the charter conferred upon the members no rights unless such military organization was kept up and maintained.  The petition shows on its face that several years ago the company, finding military duty onerous, declined to enlist in the military forces of the State, as the law required, and were disbanded as a military organization by the commander in chief, and not allowed to drill and parade as a military organization.  Having been incorporated only to perform duties which they allege became so onerous that they abandoned them, it seems to follow, as a matter of law, that the body ceased to exist as a corporation, by practically surrendering its franchise.  Certainly, if the members failed to perform military duty, they could do nothing.  So that, under the allegations made, the petitioners show that they have no right as members of the Gate City Guard to any of the powers, privileges, or exemptions conferred upon the members of that corps under the act of incorporation.  It is not a matter of concern whether the act incorporating the Gate City Guard constituted that organization either a public or a private corporation; nor is it necessary now for us to decide whether the organization still exists as a legal corporate body, nor whether as a corporation, in consequence of the non-user of the franchises for a period of years, coupled with the fact that under the laws of this State it was disbanded by the Governor, it has incurred a character; no subscription was required of its members; the only question involved by the demurrer is as to the right of petitioners to control the property alleged to be owned by the corporation; and if it be found that the petitioners have no right to the control of such property, nor any interest in it, then the ultimate disposition of such property does not concern either this court or the petitioners.  The company was organized for a purely public purpose, that of performing military duty for the State.  The powers conferred were only such as were necessary for a military organization.

The corporation had no capital stock, no shares of stock of any character; no subscription was required of its members; the only property which it was authorized under the law to hold was such as was deemed necessary or convenient for the purposes of said corps, whether obtained by gift or purchase. Concerning the rights of the members of such a corporation, this court in the case of *Mason* v. *Atlanta Fire Company,* supra, ruled that the representatives of a deceased member had no right to participate in a fund arising from the sale of the property of the company, either during the existence of the corporation or after it had been dissolved. The ruling made in that case was based on the reasons, that members in such a corporation held no stock; that they were members while they lived and belonged to the organization; that while a member of it was in life he had nothing which he could sell or assign; that it was not a trading, commercial, or ordinary business corporation, or anything like it; that its property was acquired, not by subscription paid in by its members who thereby became entitled to certificates of stock, but by donations made by public-spirited and patriotic citizens, and whether such contributions came from fairs, concerts, or otherwise, still they were donations for a great public object; that membership in such a corporation was not obtained as the result of contract, nor held by virtue of any vested right springing from a contract, but was only obtained by the will of those composing the company who acted under charter from the legislature of the State. These reasons apply in full force to the organization of the Gate City Guard, as set out in the petition; and because of them it must be held that, even if petitioners are members of the Gate City Guard, they can have no such interest in the property belonging to that organization as entitles them either to control it, or have it sold and the proceeds divided. On the dissolution of a corporation of this character, its assets are appropriated in other ways than by a division among its members." It may be that a part of what was said was obiter dictum, but the reasoning upon which the ruling in that case is based is applicable to the controlling question in the present case, and we adopt it as sound in principle.

It follows from what we have said, that if the corporation was destroyed by the act of 1916, then these petitioners have no right to maintain this suit. If, on the other hand, it was not dissolved,

if it is still in existence, petitioners or other members of the corporation may call upon the officials of the company to take corporate action to preserve the property from waste; and if they refuse to do so, then under proper allegations as members of a corporation, where directors or those occupying a position analogous to directors refuse to act, the members may act. But these petitioners show no right to maintain this suit respecting the property in question here.

*Judgment reversed. All the Justices concur.*