### DYAR v. STEWART et al.

### In re LIVINGSTON'S ESTATE.
### No. 9981.

Circuit Court of Appeals, Fifth Circuit.
Nov. 12, 1941.

Rehearing Denied Dec. 16, 1941.

W. L. Chenault, of Russellville, Ala., Robert L. Almon, of Moulton, Ala., and Jere Murphy, of Huntsville, Ala., for appellant.

Philip Shanks, Jr., and Ben L. Britnell, both of Decatur, Ala., for appellees.

Before HUTCHESON and McCORD, Circuit Judges, and MIZE, District Judge.

McCORD, Circuit Judge.

This appeal is from an order of the District Court entered on May 2, 1941, vacating and setting aside a sale of real estate made on September 6, 1932, by a trustee in bankruptcy.

We have reviewed the record and found the important facts to be these: On November 28, 1927, W. F. Livingston was adjudicated a voluntary bankrupt. J. Marvin Kelley was appointed and duly qualified as trustee of the bankrupt estate, and on January 14, 1928, was granted permission to join in a suit then pending in the State court for cancellation of a deed bearing date of November 23, 1926, and conveying lands in Morgan and Lawrence Counties, Alabama, from W. F. Livingston to his nephew. On November 21, 1929, the State court entered a decree cancelling the deed and vesting title in Kelley "as trustee in bankruptcy of W. F. Livingston." January 16, 1930, the trustee filed a petition asking permission to sell the lands at private sale, and along with the petition was filed a paper signed by the creditors and requesting that an order for a private sale be entered. Appearing on this paper was the name of J. F. Stewart, the second largest creditor of the bankrupt. The order authorizing a private sale was entered, but at that time due to the great financial and economic depression there was little activity in the real estate market, and for nearly two years the trustee was unable to find anyone interested in purchasing the lands. Finally, in September, 1932, at the depth of the depression, Dr. J. P. Dyar offered to purchase the property for $1,500. The trustee accepted the bid, made his report to the referee, and the sale was confirmed on September 10, 1932. The deed was executed and recorded, and the purchase money paid to the trustee. The validity of the sale was not questioned, and no objection was made by anyone until eight years later on November 29, 1940, when the creditor J. F. Stewart filed petition seeking cancellation of the sale.

J. F. Stewart, the appellee, contended in the court below, and contends here, that the sale to Dyar should be set aside; that he had no notice of the sale of the property; that while his name appeared on the consent filed by the creditors, he did not sign the paper or authorize anyone to sign for him; and that the sale price of $1,500 was so grossly inadequate as to amount to legal fraud and call for a cancellation of the deed.

Stewart testified positively that he never had notice that the sale was to be made; that he did not sign the creditor's consent; and that his name on this paper was a forgery. The trustee, J. Marvin Kelley, who had received his discharge at the time of the hearing of Stewart's petition, testified that Stewart did sign the paper in his presence; that he and Stewart discussed the selling of the farm; and that he "asked him if he could buy it, but he wasn't interested in buying it". He further testified that he discussed the sale of the farm lands with Stewart "before the sale and after the sale"; that Stewart knew he had sold the farm to Dyar; and that after the sale of

the farm to Dyar he deposited the money in a bank that failed and Stewart "asked me what we were going to do since the bank failed". Kelley was a disinterested witness and we see no reason for rejecting his testimony in this matter. Moreover, it appears that Stewart, who was represented by able counsel, filed his claim in the bankruptcy court and submitted to its jurisdiction; that he lived within about ten miles of the lands in question; and that he regarded the matter with indifference for eight years when he could have by the exercise of little effort determined the status of these lands at any time. When Dr. Dyar purchased the land nine years ago it was inaccessable, run down, and unkempt. Since the purchase of the land in 1932 Dr. Dyar has built terraces on the land, has cleared much of it, and a road has been built. Eight years have passed since the confirmation of the sale, the rights of the parties have become fixed, and Stewart may not now be heard to complain that he had no notice of the sale. Bray v. United States Fidelity & Guaranty Co., 4 Cir., 267 F. 533; In re Verdon Cigar Co., D.C., 193 F. 813.

▪▪ We find no merit in the contention that the price received for the land was so grossly inadequate as to authorize cancellation of the deed. The testimony as to the value of the property in 1932 is in sharp conflict. Witnesses for Dyar place the value as of 1932 at from $1,250 to $1,750, and the witnesses for Stewart say it was worth about $8,500. Certain it is that in the light of present day conditions property which sold for low prices on an inactive market during the depression will now bring much higher prices on an active real estate market. However, in determining the reasonable market value of the lands in suit, we must go back and live again in the days of the bitter depression of 1932. Furthermore, mere inadequacy of price is not sufficient to create a presumption of fraud. To authorize the court to set aside a conveyance on the ground of inadequacy of price, the inadequacy must be "so glaring and gross as at once to shock the understanding and conscience of an honest and just man." Danforth v. Burchfield, 201 Ala. 550, 78 So. 904, 905; Dunn v. Ponceler, 235 Ala. 269, 178 So. 40, 44; 27 C.J. 484, § 135.

We find nothing in the record which would authorize a cancellation of the sale at this late day. The court erred in setting aside the sale to Dyar. The judgment is reversed and the cause remanded for further proceedings consistent with this opinion.

Reversed and remanded.